UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ULISES OCAMPO SEGURA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:26-cv-00032-MPB-MJD |
| | ) |
| DONALD J. TRUMP in his official capacity as President of the United States, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

Ulises Ocampo Segura seeks a writ of habeas corpus requiring that he be released from U.S. Immigration and Customs Enforcement (ICE) detention or, alternatively, that he receive a bond hearing. Because the undisputed facts demonstrate that Mr. Ocampo Segura is eligible for a bond hearing, the Court grants his petition by directing that he be afforded a bond hearing or released from detention.

**I. Facts**

The parties do not dispute any material factual issue.

Mr. Ocampo Segura, a Mexican national, entered the United States seeking asylum in 2024. He made an appointment using the CBP One app and entered at the Calexico West Port of Entry on April 25, 2024. Dkt. 38-1 at 17.

The immigration officials who interacted with Mr. Ocampo Segura determined that he was inadmissible but did not return him to Mexico or detain him. *Id.* at 20. Rather, they released Mr. Ocampo Segura inside the United States with orders to appear before an immigration judge in

1

Chicago four months later. Dkt. 38-2 at 1. No evidence indicates that Mr. Ocampo Segura has violated any aspect of that order.

On December 5, 2025, U.S. Immigration and Customs Enforcement (ICE) officers approached Mr. Ocampo Segura outside his home in Chicago. Dkt. 38-1 at 2. According to their report, the officers were looking for another individual and planned to arrest him pursuant to an administrative warrant. *Id.* When officers approached Mr. Ocampo Segura's home, he ran, ignored officers' orders to stop, and was apprehended and arrested. *Id.* Based on his identification card and subsequent records checks, officers determined Mr. Ocampo Segura had not been lawfully admitted to the United States. *Id.*

Later that day, an "Authorized Immigration Officer" issued an administrative warrant addressed to: "Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." Dkt. 38-3 at 2. The administrative warrant states that federal records and voluntary statements by Mr. Ocampo Segura demonstrate that he is a removable alien. *Id.* It "command[s]" that he be taken into custody for removal proceedings. *Id.*

Mr. Ocampo Segura is currently detained at the Clay County Jail. The record indicates that he has not requested or received a bond hearing.

### III. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Ocampo Segura argues that his continued detention without a bond hearing violates the Fifth Amendment and the Immigration and Nationality Act (INA). He asks the Court to order that he be released immediately or, alternatively, that he receive a bond hearing. The respondents

answer that the INA not only allows but requires Mr. Ocampo Segura to be detained without bond; that this Court lacks jurisdiction over the government's decision to withhold bond; and that, if Mr. Ocampo Segura is entitled to any relief, he is entitled to at most a bond hearing.

The Court finds that Mr. Ocampo Segura's continued detention without possibility of bond violates the INA and entitles him to habeas relief in the form of a bond hearing. On this basis, the Court grants Mr. Ocampo Segura's petition in part and denies it in part.

A.   **Detention Authority and Bond Eligibility**

Mr. Ocampo Segura argues that his arrest and detention may only be authorized by 8 U.S.C. § 1226(a):

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole[.]

The respondents answer that Mr. Ocampo Segura's detention is not only authorized but required by 8 U.S.C. § 1225(b)(2)(A), which directs that "an alien who is an applicant for admission . . . shall be detained" for the pendency of removal proceedings. They insist that, because Mr. Ocampo Segura has not been admitted to the United States by immigration officials, and because he opposes his removal, he is an "alien who is an applicant for admission" and therefore subject to compulsory detention under § 1225(b)(2)(A). Dkt. 38 at 7–12. The Court rejects this position for two reasons.

3

First, the Court finds the respondents' interpretation of § 1225(b)(2)(A)—that every alien arrested inside the United States who seeks to remain here, no matter how long after arriving, is an applicant for admission subject to mandatory detention—unpersuasive. The Seventh Circuit recently responded to this argument with skepticism. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. Dec. 11, 2025) ("The question is whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders. . . . Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record."). Before and since, this Court and the vast majority of other district courts have rejected the government's interpretation. *See, e.g.*, *Delgado Avila v. Crowley*, No. 2:25-cv-00533-MPB-MJD, 2025 WL 3171175, at *2–4 (S.D. Ind. Nov. 13, 2025); *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) ("The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to 'arriving' noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Perez Reyes who have lived in the interior of the United States for years."). "As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Perez Reyes*, 2025 WL 3755928, at *3 (citing *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025)).

The respondents here cite a smattering of contrary decisions but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning

4

in those prior decisions." Dkt. 38 at 1. The respondents offer no binding authority in the other direction, and the Court declines to depart from its previous reasoning.[1]

Second, even if the respondents' legal reasoning was more persuasive, it could not be reconciled with the government's treatment of Mr. Ocampo Segura. It is not as though Mr. Ocampo Segura entered the United States without detection and then dodged immigration authorities until his arrest in December. Mr. Ocampo Segura entered the United States at a port of entry. He did so after scheduling an appointment, telling immigration authorities where and when he would enter. The officials who greeted him did not return him to Mexico or jail him. Instead, they not only released him inside the United States but ordered him to appear for a hearing in Chicago—an action that is wholly incompatible with the government's newfound conviction that he cannot be lawfully released from custody. When immigration officials arrested Mr. Ocampo Segura in December and took him into custody, an "Authorized Immigration Officer" directed through an

---

[1] The respondents offer passing references to two district court decisions that this Court briefly addresses based on their recency and their issuance from within the Seventh Circuit. In *Hernandez v. Olson*, a judge from the Eastern District of Wisconsin accepted the government's interpretation of the statutory text and found that an alien who had previously been apprehended and released multiple times and was later arrested by ICE agents while working at a Wisconsin farm was an applicant for admission subject to mandatory detention under § 1225(b)(2). No. 25-cv-1670-bhl, 2026 WL 161509, at *3–7 (E.D. Wis. Jan. 21, 2026). And, in *Cruz Rodriguez v. Olson*, a judge from Northen District of Illinois found that §§ 1225(b)(2) and 1226(a) *both* apply to certain aliens apprehended inside the United States. *See* No. 1:25-cv-12961, 2025 WL 3672856, at *7 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026) ("Sections 1225(b)(2) and 1226 have different, but overlapping, scopes."). Both dismiss *Castañon-Nava* as persuasive authority from a preliminary decision. *Hernandez*, 2026 WL 161509 at *6; *Cruz Rodriguez*, 2025 3672856 at 5, n.6. This Court disagrees with the reasoning of these decisions for reasons expressed in previous cases and discussed further below. Regardless, this Court joins another jurist from the Northern District of Illinois in deferring to *Castañon-Nava* as highly persuasive, directly applicable authority from a superior tribunal on a pure question of law. *See Morales Perez*, No. 1:25-CV-14995, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026).

The respondents also cite *Buenrostro-Mendez v. Bondi*, which the Fifth Circuit decided only days after the respondents filed their response brief in this case. Dkt. 38 at 4, n.1. *Buenrostro-Mendez* concludes that "seeking admission" is not limited to "arriving" noncitizens and therefore supports the respondents' position in this case. No. 25-20496, --- F.4th ---, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026). But, the Fifth Circuit's decision also is not binding here, and the Court again defers to the Seventh Circuit's persuasive decision in *Castañon-Nava*.

administrative warrant that he be detained for the pendency of removal proceedings pursuant to § 1226. Dkt. 38-3 at 2 (citing INA § 236). The government's actions reflect that Mr. Ocampo Segura is not subject to compulsory detention, and its paperwork documents that his detention is authorized by § 1226 rather than § 1225.

As this Court previously reasoned, mandatory detention and discretionary release are mutually exclusive concepts. An alien cannot be subject both to mandatory detention under § 1225(b)(2)(A) and eligible for discretionary release under § 1226(a)(2); the provisions can only exist harmoniously if they apply to separate classes of aliens. *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025). The government determined in 2024 that Mr. Ocampo Segura was not subject to § 1225(b)(2), and it acted under § 1226(a) to detain him in December. It cannot now maintain that he is subject to § 1225(b)(2) and therefore categorically ineligible for discretionary release. *Id.* (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a)."); *Fornalik v. Perryman*, 223 F.3d 523, 530 (7th Cir. 2000)).

By detaining Mr. Ocampo Segura and depriving him of any consideration of bond, the government has kept him in custody in violation of the INA. As a result, he is entitled to a writ of habeas corpus.

B. **Jurisdiction Under § 1226(e)**

The respondents also argue that, even if Mr. Ocampo Segura's detention is governed by § 1226, then § 1226(e) deprives the Court of jurisdiction over his claim. Dkt. 38 at 12–13. This argument collapses under its own weight. Section 1226(e) precludes review of the "Attorney General's discretionary judgment regarding the application of" § 1226 to detain an alien or revoke or deny bond or parole. The Attorney General has not rendered a discretionary judgment under § 1226. She has not rendered any judgment at all. She has not considered the possibility of bond or parole and therefore has not revoked or denied it.[2]

Section 1226(e) might preclude this Court's intervention if Mr. Ocampo Segura requested bond, an immigration judge denied his request after considering the merits, and he petitioned this Court for a different result. But there is no record that Mr. Ocampo Segura has appeared before an immigration judge. The government has not made a discretionary decision to detain him. It insists that it has no discretion. Section 1226(e) does not apply to this case.

C. **Relief Available**

Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Ocampo Segura maintains—and the Court agrees—that his detention without consideration of bond is contrary to law because his detention is authorized by § 1226(a), which makes him eligible for discretionary release but also allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Ocampo Segura's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful only to the extent the government refuses to consider whether he may be released as the law requires. He is entitled to a bond hearing and whatever relief is granted after his request is considered on the merits.

---

[2] There is no indication that Mr. Ocampo Segura has formally requested bond from his immigration judge, but the respondents do not contend that this bars his habeas petition from proceeding.

### III. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **seven days** to certify that Mr. Ocampo Segura has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been released from detention. The petition is **denied** to the extent it seeks an order that Mr. Ocampo Segura be immediately released. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Dated: February 23, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Constance M Doyle
Law Office of Constance M. Doyle
connie@cdoylelaw.com

Andrew H. Kahl
UNITED STATES ATTORNEY'S OFFICE - DSM
210 WALNUT STREET
SUITE 455
DES MOINES, IA 50309

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov